**Not Recommended for Publication or Citation**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL  DIVISION at LEXINGTON

CIVIL ACTION NO. 08-CV-006-KSF

ULYSSES WILLIAMS                                                                          PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

TARA HALBERT, ET AL.                                                              DEFENDANTS

**** **** ****

Ulysses Williams, an individual currently in the custody of the Federal Bureau of Prisons ("BOP"), and confined in the Federal Correctional Institution, in Forrest City, Arizona, has submitted a *pro se* prisoner civil rights action, pursuant to 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). He has also filed a Motion to Proceed *in forma pauperis*, which will be granted by separate Order.

The Complaint is now before the Court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

In screening, as always for submissions by *pro se* litigants, the Complaint is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

## CLAIMS

Plaintiff claims that while he was incarcerated at the Federal Medical Center ("FMC") in Lexington, Kentucky, the Defendants violated his rights under the Fifth, Eighth and Fourteenth Amendments to the U.S. Constitution.

## DEFENDANTS

As the Defendants, Plaintiff names FMC-Lexington's (1) Tara Halbert, Unit Manager of Blue Grass Unit; (2) James Buckner, an SIS[1] investigator, and (3) Warden Dewalt; he also names (4) "Ms. Anderson (FNU)," who is described as an SIS Supervisor, and the BOP's (5) K.M. White, Mid Atlantic Regional Director; and he reveals his intention to name the (6) Captain in charge of the SIS and the BOP's (7) national Director, whose names are not now known to him. Plaintiff specifies that he is suing each of the Defendants "in a fiduciary as well as a private capacity," which the Court construes as meaning that they are sued in their official and individual capacities.

## RELIEF REQUESTED

Plaintiff seeks injunctive relief and damages.

## FACTUAL ALLEGATIONS

The following is a summary or construction of the Plaintiff's allegations as typed onto a standard complaint form or contained in documents attached to the Complaint [Record No. 2], which he has signed under penalty of perjury.

Plaintiff claims that a U.S. Attorney, named Amanda Roberteson, instructed him to assist the FBI/ Homeland Security Department in collecting data on possible domestic terrorist groups in the BOP and to use FMC-Lexington's SIS as the liaison for funneling the information from the prison

---

[1] The Court takes judicial notice that the "SIS" is a BOP prison's Security Investigative Section.

back to the FBI.  Plaintiff states that SIS employees Buckner and Anderson ordered him to help them find out how contraband was getting to the prison.

Williams claims that when he passed data about suspected drug deals to Buckner and Anderson, however, the suspects found out.  For this reason, and "because I was also working on some other sensitive projects with other inmates and agencies," Plaintiff became increasingly reluctant to continue with the activities for the SIS.  At this point, he alleges, Defendant Anderson promised that if he could "deliver" the staff members with the contraband, then he and his helpers would receive a rule 35(b) reduction and be sent to the camp of their choice while the paperwork was being completed.  Additionally, Defendants Anderson and Buckner allegedly promised  that they would keep him out of seg,[2] move at a moment's notice, and continue to promptly forward his information to the other agencies.

Plaintiff contends that after he had arranged a buy "to bring into the institution a large quantity of Meth, and Oxycotin, and two cellphones with internet capabilities," however, the SIS stalled with any move of their own, nor would they permit him to contact the FBI personally.  Williams also claims that he went to the SIS captain three times, but that officer also stalled.  "[N]ow I know that it was because they were taking my information and trying to attribute it to some people of another race."  Plaintiff claims that he even contacted the Attorney General.

At some point, the Plaintiff complains, he told his unit manager, Defendant Halbert that he suspected that the SIS was in bed with the people being investigated – and she then told those very people.  As a result, SIS took him off his prison job and placed him in seg, "for his own protection."

---

[2]  Presumably this means "segregation."  Plaintiff later explains that this is the term used for the "Special Housing Unit."

3

However, he claims that he never had a hearing as to the purported danger.  Plaintiff also alleges that while he was in segregation, for two weeks he repeatedly told personnel to recover his property because he had sensitive documents and proof of criminal activity in it, but they did not safeguard it.  As he purportedly feared and warned, his locker was burglarized, and he lost both the proof and his personal belongings.

In segregation, Plaintiff purportedly suffered retaliation in the form of constant "shakedowns," tampering with his food, a flashlight in his face as a voice called him a "Nigger" and threatened to "kill his black ass!  You know what happened in Florida and Colorado.  No matter where you go, we can reach out and touch you!"  Plaintiff claims that his grievances and pleas for help to other BOP staff were continually denied.  Further, he now worries not only for himself but also for his family's safety.

Plaintiff provides only two dates for the events complained of:  "These things happened from May 2006 until June 15, 2007; and then I went to the Special Housing Unit (SEG) on June 15, 2007, and that's when my property got stolen and all the other things began to happen."  He attaches documents which purport to show that beginning in June or July of 2007, he pursued BOP Administrative Remedy Numbers 457703 and/or 461033, complaining of BOP staff misconduct, and that he pursued the matter to exhaustion, the Administrator of Inmate Appeals' final denial of relief being dated September 24, 2007.  He claims that he filed a tort claim for his property and that a copy of it is attached.  However, such a document is not attached.

While the administrative process was going on, on August 3, 2007, Plaintiff was transferred from FMC-Lexington to his current facility, one with a low security rating.  He filed the instant *Bivens* action from that location.  Williams asserts that he is so worried about being murdered that

4

he has come to this Court so that someone will monitor what happens to him.  He seeks orders for his protection; asks for the "evidence" gleaned while he cooperated with the SIS to be sent to his sentencing judge and the FBI/Department of Homeland Security; calls for specific performance of the SIS promises; and demands damages.

<u>DISCUSSION</u>

In his complaint, the instant Plaintiff has written, "This was such a complex situation, I couldn't single out the role of each member of the defendants, but I am sure that each one played a role in my . . .  rights being violated."  While the Plaintiff's allegations about the Defendants are disturbing if true, the Court is also concerned whether his admitted lack of specificity with regard to what each defendant did warrants their being hauled into Court to answer Williams' claims.

The Supreme Court of the United States has held that a defendant may be held answerable only for his own acts, and Defendants without personal involvement or participation in the unconstitutional acts must be dismissed.  *Rizzo v. Goode*, 423 U.S. 362 (1976).  To state a cognizable claim, the plaintiff must allege that each defendant personally participated in unconstitutional acts which violated his rights, as a *Bivens* defendant can only be held liable if he acted knowingly and participated in the unconstitutional conduct.  *Monell v. Dep't of Social Serv.*, 436 U.S. 658 (1978).

The instant Plaintiff describes specific actions/inaction by Defendants Halbert, Buckner, Anderson and the SIS Captain, but he does not assert that Dewalt, White, or the Director of the BOP was personally involved in any complained-of action.  *See Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988); *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979).  The Plaintiff cannot recover against these three persons on a *respondeat superior* theory of liability.  *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469

5

U.S. 845 (1984).

In order to find supervisors liable, a plaintiff must allege that the supervisor condoned, encouraged or participated in the alleged misconduct. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989). Supervisory personnel are liable for constitutional violations only where evidence establishes that they authorized or approved the unconstitutional conduct. *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241 (6th Cir. 1989), *cert. denied*, 110 S. Ct. 2173 (1990). Plaintiff must show "'that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994) (quoting *Bellamy v. Bradley*, 729 F.2d at 421). The instant Plaintiff has failed to do so with regard to these three supervisory Defendants.

In short, the pleadings in this case have not set forth the factual basis of the claims against Defendant Dewalt, the BOP's Regional Director White, or the BOP's National Director in a manner that gives proper notice and does not require either these Defendants or this Court to "conjure up unpled allegations." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). "A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits the facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988) (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n.3 (1st Cir. 1976), *cert. denied*, 431 U.S. 914 (1977)).

Therefore, the Court will dismiss Defendants Dewalt, White, and the John Doe Director of the BOP, but will require the remaining Defendants to respond to Williams' complaint. Because the case will proceed and Plaintiff has named a "Captain," whose name he does not know, as a Defendant, Williams is advised of Federal Rule of Civil Procedure 4(m), which provides as follows:

6

**Time Limit for Service**. If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j).

Fed.R.Civ.P. 4(m) (2007). Plaintiff is now on notice that if any John Doe defendants are not named and served within 120 days, then the claims against said John Doe defendants shall be dismissed pursuant to the terms of Rule 4(m).

<u>CONCLUSION</u>

(1)    The following Defendants in this action are dismissed, *sua sponte*, without prejudice: Warden Dewalt, K.M. White, and the Director of the BOP.

(2)    The Clerk in the divisional office in which the case lies shall prepare and issue summons for Tara Halbert, James Buckner, and Ms Anderson, in their official and individual capacities; in addition to the summonses, the Clerk shall make 2 sets of copies of the summonses and mark one set to be served on the United States Attorney General and one set to be served on the United States Attorney for the Eastern District of Kentucky.

(3)    The Divisional Clerk shall also prepare as many copies of the Complaint and copies of the instant Order as there are summonses and any required USM Forms 285. If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285 regarding any defendant, the Clerk shall promptly make a clerk's entry on the docket stating why the Clerk cannot fill out the summons or USM Form 285 or any other documents necessary to effectuate service.

(4)    After the Lexington Clerk's office has prepared the summonses, USM Forms

7

285, Complaint copies, copies of this Order, and/or any other documents necessary to effectuate service, a Deputy Clerk in the Lexington Clerk's office shall hand-deliver said documents to the United States Marshal's office in Lexington, Kentucky.

(5)     The Lexington Deputy Clerk making the delivery referenced in paragraph (4) to the United States Marshal's office shall obtain from the Marshal a receipt for the hand-delivered documents, which receipt shall be entered  into the instant record by the Clerk.

(6)     The United States Marshal shall serve a summons, Complaint copy, and copy of this Order on each named Defendant for whom a summons has been prepared and shall serve copies of these documents on the United States Attorney General, in Washington, D.C. and on the United States Attorney for the Eastern District of Kentucky, all service to be made by certified mail, return receipt requested.

(7)     The United States Marshal shall make a return report to the Court of whether the summons is executed or is still unexecuted within forty (40) days of the date of entry of this Order.

(8)     The Plaintiff shall keep the Clerk of the Court informed of his current mailing address.  Failure to notify the Clerk of any address change may result in a dismissal of this case.

(9)     For every further pleading or other document he wishes to submit for consideration by the court, Plaintiff shall serve upon each remaining Defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document.  Plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed

8

to each defendant or counsel.  If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.

This 29th day of January, 2008.

**Signed By:**

**_Karl S. Forester_**   K S F

**United States Senior Judge**

9