**Not Recommended for Publication or Citation**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL  DIVISION at LEXINGTON

CIVIL ACTION NO. 08-CV-006-KSF

ULYSSES WILLIAMS                                                                        PLAINTIFF

VS:                            **MEMORANDUM OPINION AND ORDER**

TARA HALBERT, ET AL.                                                              DEFENDANTS

**** **** ****

This matter is before the Court on the parties' several pending motions.

BACKGROUND

On January 7, 2008, Ulysses Williams, an individual currently in the custody of the Federal Bureau of Prisons ("BOP"), and confined in the Federal Correctional Institution, in Forrest City, Arkansas, submitted a *pro se* prisoner civil rights Complaint, pursuant to 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

The Plaintiff wrote, "This was such a complex situation, I couldn't single out the role of each member of the defendants, but I am sure that each one played a role in my . . . rights being violated." Nonetheless, Williams then named six (6) BOP personnel as the Defendants and claimed that while he was incarcerated at the Federal Medical Center ("FMC") in Lexington, Kentucky, the Defendants violated his rights under the Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution.

In its Order issued after screening the Complaint, the Court summarized the factual allegations upon which Williams bases his claims:

Plaintiff claims that a U.S. Attorney, named Amanda Roberteson, instructed

him to assist the FBI/ Homeland Security Department in collecting data on possible domestic terrorist groups in the BOP and to use FMC-Lexington's SIS as the liaison for funneling the information from the prison back to the FBI.  Plaintiff states that SIS employees Buckner and Anderson ordered him to help them find out how contraband was getting [in]to the prison.

Williams claims that when he passed data about suspected drug deals to Buckner and Anderson, however, the suspects found out.  For this reason, and "because I was also working on some other sensitive projects with other inmates and agencies," Plaintiff became increasingly reluctant to continue with the activities for the SIS.  At this point, he alleges, Defendant Anderson promised that if he could "deliver" the staff members with the contraband, then he and his helpers would receive a rule 35(b) reduction and be sent to the camp of their choice while the paperwork was being completed.  Additionally, Defendants Anderson and Buckner allegedly promised that they would keep him out of seg.[1]  [They also instructed him to be ready to] move at a moment's notice, and [to] continue to promptly forward his information to the other agencies.

Plaintiff contends that after he had arranged a buy "to bring into the institution a large quantity of Meth, and Oxycotin, and two cellphones with internet capabilities," however, the SIS stalled with any move of their own, nor would they permit him to contact the FBI personally.  Williams also claims that he went to the SIS captain three times, but that officer also stalled.  "[N]ow I know that it was because they were taking my information and trying to attribute it to some people of another race."  Plaintiff claims that he even contacted the Attorney General.

At some point, the Plaintiff complains, he told his unit manager, Defendant Halbert that he suspected that the SIS was in bed with the people being investigated – and she then told those very people.  As a result, SIS took him off his prison job and placed him in seg, "for his own protection." However, he claims that he never had a hearing as to the purported danger.  Plaintiff also alleges that while he was in segregation, for two weeks he repeatedly told personnel to recover his property because he had sensitive documents and proof of criminal activity in it, but they did not safeguard it.  As he purportedly feared and warned, his locker was burglarized, and he lost both the proof and his personal belongings.

In segregation, Plaintiff purportedly suffered retaliation in the form of constant "shakedowns," tampering with his food, a flashlight in his face as a voice called him a "Nigger" and threatened to "kill his black ass!  You know what happened in Florida and Colorado.  No matter where you go, we can reach out and

---

[1]  Presumably this means "segregation."  Plaintiff later explains that this is the term used for the "Special Housing Unit" or SHU.

touch you!"  Plaintiff claims that his grievances and pleas for help to other BOP staff were continually denied.  Further, he now worries not only for himself but also for his family's safety.

Plaintiff provides only two dates for the events complained-of:  "These things happened from May 2006 until June 15, 2007; and then I went to the Special Housing Unit (SEG) on June 15, 2007, and that's when my property got stolen and all the other things began to happen."  He attaches documents which purport to show that beginning in June or July of 2007, he pursued BOP Administrative Remedy Numbers 457703 and/or 461033, complaining of BOP staff misconduct, and that he pursued the matter to exhaustion, the Administrator of Inmate Appeals' final denial of relief being dated September 24, 2007.  He claims that he [also] filed a tort claim for his property. . . .

While the administrative process was going on, on August 3, 2007, Plaintiff was transferred from FMC-Lexington to his current facility, one with a low security rating.  He filed the instant *Bivens* action from that location.  Williams asserts that he is so worried about being murdered that he has come to this Court so that someone will monitor what happens to him.

Record No. 6 at 2-5.  As to the relief which Williams seeks, the Court noted that his requests were for "orders for his protection; . . . for the "evidence" gleaned while he cooperated with the SIS to be sent to his sentencing judge and the FBI/Department of Homeland Security; . . . for specific performance of the SIS promises; and [he] demands damages."  *Id.* at 5.

The Court dismissed three of the six BOP employees who were solely administrators in the administrative remedy process but directed that summons issue for FMC-Lexington's Unit Manager Tara Halbert; Special Investigative Services ("SIS") technician James Buckner; and the Special Investigative Agent ("SIA") named "Ms. Anderson."  Because the Plaintiff specified that his suit was against each Defendant "in a fiduciary as well as a private capacity," the Court construed this allegation as meaning that they are all being sued in their official and individual capacities.

Additionally, as the Plaintiff had stated his intention to name additional Defendants whose names were then not known, the Court informed him that he had only 120 days from the filing date

in which to do so.  Subsequently, he added FMC-Lexington's Captain B.J. Johnson as the fourth Defendant, and he is now before the Court.

DEFENDANTS' DISPOSITIVE MOTION

In response to the Complaint, the Defendants have moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative, for entry of summary judgment in their favor pursuant to Rule 56(b).  Their accompanying Memorandum of Law and supporting exhibits are tendered in a sealed envelope, attached to a Motion to Seal the contents, based on sensitive material being contained therein.  [Record No. 21]

With regard to the facts, the newest Defendant, Captain Johnson, avers in a declaration that he does not know the Plaintiff, was not at FMC-Lexington at any of the complained-of times, and knows nothing of the events alleged.  Although he is now at that facility, he did not take that position until February of 2008, six months after Plaintiff was transferred away, on July 27, 2007.  In fact, this Defendant wonders if the Plaintiff has him confused with the predecessor Captain at FMC-Lexington.

In their declarations, the three remaining Defendants swear to their individual involvement with Plaintiff during the 2 months from May to July of 2007.  The ex-unit manager, Halbert,[2] states that when she happened into the office of a prison counselor on another matter on June 14, 2007, she heard Plaintiff openly discussing a contraband ring, his role as an informant for the SIS, and his concern that his role as an informant had been revealed by SIS staff.  Consistent with policy, she and the counselor both reported the conversation to the SIS to investigate.

The two SIS Defendants, Buckner and Anderson, contend that Plaintiff had a history of

---

[2]  Tara Halbert retired in December of 2007, months after Plaintiff had been transferred away.

4

acting as an informant for the federal government, and in May of 2007, it was he who approached SIS staff, not the SIS approaching him, with the idea that Williams could provide information about inmates and staff involved in bringing narcotics and other contraband into the prison. They contend that on that day in May, his information was vague, but he was told that if he could provide more, he should do so by "discrete communications" with SIS staff; otherwise, he was not to discuss his cooperation with the SIS to other inmates on non-SIS staff. Further, they deny making any offer to try to obtain a Rule 35 Motion; in fact, Buckner swears that he specifically told Plaintiff that any decision on a Rule 35 Motion to Reduce Sentence would be up to the Prosecutor solely.

However, according to Buckner and Anderson, Plaintiff did not comply with these guidelines or others. One directive was for him not to do any buying or investigating, but he later told Halbert that he had paid other inmates to infiltrate the ring, claiming to having paid $20.00 of his own money. Nor did he proceed discretely, as instructed. Purportedly, Williams approached SIS staff in plain view of other prisoners; further, he improperly discussed the contraband ring and his informant role with non-SIS personnel such as Halbert.

The SIS Defendants have averred, "Over time, we realized Plaintiff could not provide any detailed information about the alleged ring, despite his bold claims." It is their position that "[i]n the end, Plaintiff never provided any useful information on the alleged contraband ring, the existence of which was never substantiated by FMC Lexington SIS staff." Rather, these Defendants theorize that Williams was never in the position to infiltrate but he "was motivated by his hope to receive a Rule 35 sentence reduction and possibly other favors in exchange for being an informant, as he had in the past."

These Defendants swear that they know of no harm coming to Williams while he was at

5

FMC-Lexington; nor do they have any knowledge of his being threatened by staff there; nor did they subject him to racial epithets or know of anyone else's subjecting him to racial epithets in the Segregated Housing Unit ("SHU"). Nonetheless, because Plaintiff's flagrant conduct had put him at risk of harm from other inmates, on June 15, 2007, he was put in the SHU at FMC-Lexington for his own protection. These two Defendants aver that they had no involvement with Plaintiff's personal property when he was put in SHU. Finally, they state that on July 27, 2007, Williams was transferred to another prison under a "Transfer Code 323, Close supervision. This transfer code pertains to inmates who necessitate transfer for reasons of their own safety."

With regard to the law, the Defendants urge dismissal of all *Bivens* claims against them in their official capacities, as they are officials of the government and thus protected by the United States' sovereign immunity. They also contend that they are entitled to dismissal or Summary Judgment individually, on the ground that Williams has failed to present a cognizable constitutional claim against any of them under Eighth Amendment, due process, or equal protection law. For this failure to show a violation of his rights, they argue, they are also entitled to qualified immunity.

The Defendants point out that two of the Plaintiff's requests for relief are not available to him through this action. The sentence reduction is the province of the sentencing court and the prosecutor; and as to a move to another prison, he has been granted this, notwithstanding that the law is that prisoners have no liberty interest in the location of their confinement. Finally, with regard to Plaintiff's lost or stolen property, his claim under the Federal Tort Claims Act ("FTCA") specifically exempts the BOP from liability for the loss of prisoner property.

Accordingly, the Defendants seek entry of Summary Judgment in their favor.

<u>Plaintiff's Response</u>

The Plaintiff has submitted a combined Response and Motion to Deny Dismissal and Summary Judgment. With regard to the facts, he insists that the Defendants are perjuring themselves and that there are material facts which should be addressed by a trier of fact. "The only issue left to resolve is who is telling the truth. . . ." Therefore, Summary Judgment should not be granted.

Plaintiff specifically counters certain factual allegations of the Defendants. For example, he maintains that it was the SIS who approached him, not *vice versa*. Also, he told Halbert that the SIS was involved in what he was investigating and that his life was in danger from them; there was no policy requiring her to go to the SIS when the complaint involved SIS staff; rather, the policy was to go to the warden with any claim about the SIS. Williams insists that he never asked or wanted to work for the SIS. He asks why he would volunteer to work for SIS when "he has already secured a rule 35(b), plus he was still gathering intel for the FBI/Homeland Security?"

With regard to his discrimination claim, Williams' position is that the Defendants "clearly violated his 5th and 14th amendment rights by taking Plaintiff's information and accrediting it to another inmate of another race. Their actions were racially motivated and can be proven in discovery." Record No. 25/26 at 5. As to his Eighth Amendment claim, Halbert was deliberately indifferent to his safety when she wrote the memo to the SIS; and the other Defendants, in putting him in SHU, certainly "knew there existed a real possibility that there would be retaliation from staff, especially after a staff member had just committed suicide over this same issue."

Plaintiff attaches to his Response, several exhibits which purportedly "prove that Plaintiff was working for FBI/Homeland Security, and that he was dealing with SIS long before they said he was in their declarations. Therefore, it is my prayer that the Court dismiss all defendants motions."

7

DISCUSSION

Standards for Dispositive Motions

Federal Rule of Civil Procedure ("Rule") 12(b) provides for a defendant to move for dismissal for six reasons listed therein.  The Defendants herein contend that they are entitled to dismissal for lack of jurisdiction on the negligence claim, under Rule 12(b)(1); and they urge dismissal of the civil rights claims under Rule 12(b)(6), which provides for a defendant to move for dismissal for a plaintiff's "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint.  The Court views the complaint in the light most favorable to the plaintiff and "must accept as true 'well-pleaded facts' set forth in the complaint."  *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 680 (6th Cir. 2004) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).  "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  *Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir.1997).

If it appears beyond doubt that a plaintiff's complaint does not state facts sufficient to "state a claim that is plausible on its face," then the claims must be dismissed.  *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1974 (2007); *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542(6th Cir. 2007); *Our Lady of Bellefonte Hospital, Inc. v. Tri-State Physicians Network, Inc*., 2007 WL 2903231, *2 (E.D.Ky. 2007) (slip op.).

Rule 12(b)(6) continues, in pertinent part, as follows:

If, on a motion asserting the defense numbered (6) to dismiss for failure of the

8

> pleading to state a claim upon which relief can be granted matters outside the
> pleading are presented to and not excluded by the court, the motion shall be treated
> as one for summary judgment and disposed of as provided in Rule 56, and all parties
> shall be given reasonable opportunity to present all material made pertinent to such
> a motion by Rule 56.

*Id.*  Thus, the plain language of the rule requires that if the Rule 12(b)(6) motion has attachments which the Court considers, such as the declarations herein, then the motion "shall" be converted into a motion for summary judgment pursuant to Rule 56. *See Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993).

In the case *sub judice*, because the Court has considered the content of the declarations and exhibits submitted herein, the Court must also examine the standards for summary judgment. Summary Judgment should be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (2007). The evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* 522 U.S. 967 (1997).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).  The significant question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-53 (1986).

The moving party has the burden of showing there is an absence of evidence to support a claim. *Celotex*, 477 U.S. at 324-25. After the moving party carries its burden, the non-moving party must go beyond the pleadings to designate by affidavits, depositions, answers to interrogatories, and admissions on file, specific facts showing that there is a genuine issue of material fact for trial. *Id.* If the non-moving party completely fails to prove an essential element of his or her case, then all other facts are rendered immaterial. *Id.* at 322-23.

Because the Defendants contend both that the Plaintiff has failed to meet the applicable standards for stating constitutional claims and also that they are entitled to qualified immunity, the Court examines the standard for the latter also. Qualified immunity is described by the Supreme Court as follows: "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The first step of evaluating such a defense is for the Court to determine whether a constitutional violation occurred. *See Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).

Therefore, the question of whether the named Defendants are entitled to qualified immunity is the same as the initial *Bivens* question herein, *i.e.*, whether a constitutional violation occurred at the hands of persons acting under color of federal law. The Plaintiff has the burden of establishing both that certain federal rights were violated and that the Defendants are not entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991); *Williams v. Mehra*, 186 F.3d 685, 692-93 (6th Cir. 1999) (quoting *Celotex,* 477 U.S. at 322).

With these standards in mind, the Court turns its attention to the Defendants' dispositive Motion.

Negligence Claim

The Court begins with its jurisdiction to entertain the property claims.  Subject matter jurisdiction is the unwaivable *sine qua non* for exercise of the federal judicial power.  *Richmond v. International Business Machines Corporation*, 919 F. Supp. 107 (E.D.N.Y. 1996) (citing Fed. R. Civ. P. 12(b)(1)).  The lack of subject matter jurisdiction may be asserted by either party or by the court, *sua sponte*, at any time during the course of an action.  *Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939).  Once challenged, the burden of establishing a federal court's subject matter jurisdiction rests on the party asserting the jurisdiction.  *Thomason v. Gaskill*, 315 U.S. 442 (1942).  *Sua sponte* dismissal is proper upon a district court's discovery of lack of subject matter jurisdiction.  *Bell v. Hood*, 327 U.S. 678, 681-82 (1946); *Morrison v. Tomano*, 755 F.2d 515 (6th Cir. 1985).

The Defendants have raised subject matter jurisdiction with regard to the BOP's alleged negligence in handling the Plaintiff's personal property.  A corollary to the doctrine of governmental immunity is that, when the United States consents to be sued, Congress may define the conditions under which suits will be permitted.  *Kendall v. United States*, 107 U.S. 123 (1882).  Congress has not waived sovereign immunity with regard to civil rights suits but has done so for certain negligence suits, and that limited waiver is contained in the  FTCA.

In the FTCA, Congress set out the circumstances under which the U.S. government consents to be sued in negligence:  "for money damages,...for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment...."  28 U.S.C. § 1346(b).  As a waiver of

11

sovereign immunity, however, its terms are strictly construed, and all ambiguities are resolved in favor of the sovereign. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992). In the words of the Supreme Court, "[W]e should not take it upon ourselves to extend the waiver beyond that which Congress intended. Neither, however, should we assume the authority to narrow the waiver that Congress intended." *United States v. Kubrick*, 404 U.S. 111, 117-18 (1979).

In keeping with these principles, exceptions to the United States' liability, found in 28 U.S.C. § 2680(a)-(n), have been broadly construed. *See e.g., Lurch v. United States*, 719 F.2d 333, 338 (10th Cir. 1983), *cert. denied*, 466 U.S. 927 (1984). Such is exactly what happened when the exception relevant herein came before the Supreme Court.

28 U.S.C. **§** 2680, **Exceptions**, provides in pertinent part, as follows:

> The provisions of this chapter and section 1346(b) of this title shall not apply to–
> . . .
> **(c)** Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer . . . .

28 U.S.C.A. § 2680(c) (2000). In *Kosak v. United States*, 465 U.S. 848, 854 (1984), the Supreme Court of the United States first broadly construed this exception and held that the phrase "arising in respect of" includes any claim "arising out of" the detention of goods, including negligent and intentional conduct, by government employees. *Id.*

After *Kosak*, there arose a conflict in circuits' interpretations as to whether the BOP was included in the "other law enforcement officer" language of the exception. Just this year, the Supreme Court has decided that issue in favor of the BOP, *i.e.*, a BOP officer is exempted from liability for such goods based upon a BOP officer being "any other law enforcement officer." *Ali*

12

*v. Federal Bureau of Prisons*, ___ S.Ct. ___, 2008 WL 169359 (January 22, 2008).

In *Ali*, the High Court thus resolved the conflict among the circuits, ruling that BOP officers are, indeed, exempt from liability for lost or destroyed goods of prisoners.  The Court concluded, "Section 2680(c) forecloses lawsuits against the United States for the unlawful detention of property by 'any,' not just 'some,' law enforcement officers."  *Id.* at *7.  Therefore, Plaintiff Ali's claims were barred by statute.

Consistent therewith, this Court concludes that the instant Plaintiff's FTCA claim for loss of his personal property is barred by 28 U.S.C. § 2680(c).  Because the waiver of liability does not extend to the BOP's detention of goods, this Court lacks subject matter jurisdiction to decide Williams' loss-of-property claim and the BOP is entitled to Summary Judgment as a matter of law.

<u>Claims against the Federal Employees in their Official Capacities</u>

The Court has already discussed the general rule that the United States is immune from suits for damages, *supra*.  Similarly, agencies of the United States, such as the BOP, are immune from suit because Congress has not waived sovereign immunity with regard to civil rights actions.  *See Savage v. United States*,  450 F.2d 449, 451 (8th Cir. 1971)  (42 U.S.C. §1983),  *cert. denied*, 405 U.S. 1043 (1972); *Smallwood v. United States*,  358 F.Supp. 398 (E.D. Mo.) (42 U.S.C. §1985), *aff'd*, 486 F.2d 1407 (8th Cir. 1971).

A plaintiff may not, however, avoid the bar of sovereign immunity simply by naming individual federal officers of the United States.  *Ecclesiastical Order of the Ism of Am v. Chasin*, 845 F.2d 113, 115 (6th Cir. 1988) (citing *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982)).  When damages are sought against federal employees in their official capacities, the damages in essence are sought against the United States, and such claims cannot be maintained.

13

*Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United States*, 521 F.2d 872, 874-75 (9th Cir. 1975).  Accordingly, the claims against the four named Defendants in their official capacities must be dismissed.

However, under *Davis v. Passman*, 442 U.S. 228 (1979), the Court has federal jurisdiction under 28 U.S.C. § 1331 for damage claims against individual federal officers, if they are sued in their individual capacities for violations of Constitutional rights.  Since Plaintiff Williams' allegations have been construed to be against the four federal officials in their individual capacities, as well as their official capacities, therefore, the Court next examines whether he has stated a cognizable Constitutional claim against any or all of the four individual Defendants.

<u>Claims against the Federal Employees in their Individual Capacities</u>

It is well settled that to state a claim that is cognizable as a civil rights action, pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), a plaintiff must plead two essential elements.  He must show, first, that he has been deprived of rights secured by the Constitution or other laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law.  *Id.* at 397.

There is no question that the individually named Defendants herein, all BOP employees, were acting under color of federal law.  Accordingly, the Court turns its inquiry to whether the Plaintiff has shown that each named Defendant has deprived him of his rights under the Constitution or other federal law.  Beginning with Defendant Johnson, however, the Court is faced with virtually no allegations at all.  Plaintiff does not dispute B.J. Johnson's declaration that his Defendant status herein is one of mistaken identity.

Besides not refuting Defendant Johnson's declaration, Williams has abandoned any

14

suggested claim against him.  *See Humphrey v. U.S. Attorney General's Office*, 2008 WL 2080512 (6TH Cir. 2008) (slip op.).  Further, *Bivens* requires a showing that the named defendant performed acts that resulted in the deprivation of a constitutional right.   *See Rizzo v. Goode*, 423 U.S. 362, 375-76, 96 S.Ct. 598 (1976); *Bivens*, 403 U.S. at 390 n.2; *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir.1998).   Liability under *Bivens* is personal and is based upon each defendant's own constitutional violations. *Trulock v. French*, 275 F.3d 391, 402 (4th Cir. 2001).  Because there are no allegations of specific acts by B.J. Johnson, this Defendant is entitled to dismissal.

As to the remaining three Defendants, Williams has claimed that they discriminated against him on the basis of race.  Twice he has complained of the Defendants taking his information and crediting it "to another inmate of another race."  That is all – no details about what, who, when, where.  Plaintiff's allegations fall far short of being sufficient to state a constitutional claim.

The equal protection principles of the due process clause of the Fifth Amendment provide "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  Claims of racial discrimination must be pled with particularity. *See Blackburn v. Fisk University*, 443 F.2d 121 (6th Cir. 1971); *Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990).

It is well established that the "plaintiff could not make out a violation of his equal protection rights simply by showing that other inmates were treated differently." *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 114 S. Ct. 127 (1993).  The plaintiff must show that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim." *Id.* (citing *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir. 1988)).  As the instant Plaintiff has not made such a showing, no cognizable equal protection claim

15

has been stated. *Id.* He has merely alleged conclusory claims of racial discrimination. *See Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986).

The Plaintiff has also charged that these Defendants violated his due process rights under the Fifth and Fourteenth Amendments of the Constitution. To the extent that he claims that he was entitled to a hearing about being put in SHU and was, therefore, deprived of certain procedural protections, he is informed that he was entitled to due process only if he had a protected liberty interest in his placement there. *See Morrissey v. Brewer*, 408 U.S. 471 (1972). If he has no protected liberty interest, then he was not entitled to Constitutional procedures. *Id.*

The Court finds that Plaintiff has established no protected liberty interest that was infringed by the Defendants' alleged actions, and thus, finds that he has not stated a due process violation. "[T]hese interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The instant Plaintiff has claimed that in the SHU, he was called names, he had been threatened, and he became ill after several meals. None of these events are alleged to have come from the Defendants directly. Nonetheless, even if these conditions in the SHU for the month that he was there before transfer were "atypical and significant" to the "ordinary incidents of prison life," he offers no proof of these conditions. No administrative remedy filings. No contradicting affidavits or other documents. All but one of Williams' attached exhibits[3] purport to show that for more than

---

[3] Plaintiff's final attachment to his Response is a June 22, 2007, Request for a Close Supervision Transfer of Williams to another prison. The rationale for the transfer, signed by Halbert and a case manager, contains the Defendants' description of events herein. "As a result of his conduct inmate Williams breached confidentiality with the

six months before his first meeting with the SIS in May of 2007, he was already acting as an informant for other governmental units, and had been an aspirant to a reduced sentence proposed by the Prosecutor.  Nothing as to the conditions imposed on him in SHU.

The Court concludes that the Plaintiff  has failed to show conditions constituting such a typical and significant hardship that he was deprived of a liberty interest in not having a hearing. Therefore, the failure to give him a hearing was not a violation of the procedural due process guaranteed by the United States Constitution.  *See Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir.1997) (quoting *Sandin*, 515 U.S. at 486); *see also Fox v. LaManna,* 2008 WL 348849 (D. S.C. 2008) (unpublished) (Defendants who did not conduct reviews required of prisoners in SHU were entitled to qualified immunity because prison regulations requiring reviews cannot confer a liberty interest protected by due process given the Supreme Court's admonition, the Court citing to *Sandin v. Conner*, 515 U.S. at 484); *Smith v. United States*, 2007 WL 4270602, *10 (M.D. Pa. 2007) (slip op.) (same).

The Defendants contend that if the Plaintiff actually means to urge a substantive, not procedural, due process claim, his allegations also fall short of the requisite showing.  An allegation must be that the government has engaged in "conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty,'" the standard set out in *United States v. Salerno*, 481 U.S. 739, 746 (1987).  The Court agrees that Plaintiff's allegations do not meet this standard. If Plaintiff were in danger from both the SIS and inmates, it does not shock the  conscience of this

---

SIS Department.  Inmate Williams's actions have seriously impeded efforts to validate his original allegation.  His continued presence at this facility impedes current, ongoing investigations into contraband introduction."  Record No. 25/26, last page.  Plaintiff states that it shows what the SIS put as their "excuse" to get him locked up and at their mercy in SHU.

Court that the SIS would put him where at least the inmates could not reach him; nor does it shock

the conscience to suggest his removal from the institution.

Moreover, the purported substantive due process claim would fail for another reason. As

another district court has written,

> [Plaintiff]'s primary claim is based on the Eighth Amendment's requirement that
> prison officials have a duty to protect prisoners. The Supreme Court has clearly stated
> its reluctance to expand the concept of substantive due process. "Where a particular
> amendment provides an explicit textual source of constitutional protection against
> a particular sort of government behavior, that Amendment, not the more generalized
> notion of substantive due process, must be the guide for analyzing these claims."
> *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1714, 140 L.Ed.2d
> 1043 (1998), quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104
> L.Ed.2d 443 (1989) (internal quotation marks omitted). "[I]f a constitutional claim
> is covered by a specific constitutional provision, such as the Fourth or Eighth
> Amendment, the claim must be analyzed under the standard appropriate to that
> specific provision, not under the rubric of substantive due process." *United States v.
> Lanier,* 520 U.S. 259, 272 . . . (1997).
>
> Because [Plaintiff]'s claim is based on the Eighth Amendment, any claim pertaining
> to an alleged violation of substantive due process must be analyzed under Eighth
> Amendment standards. Accordingly, no separate discussion of [Plaintiff's]
> substantive due process claim is necessary.

*Savocchio v. Crabtree*, 1999 WL 562692, 9 -10 (D.Or. 1999). The Court adopts this reasoning as

an alternative basis for dismissal of the liberally construed substantive due process claim.

The Court comes to the instant Plaintiff's primary claim, which, like Plaintiff Savocchio's,

is based on the Eighth Amendment. The Eighth Amendment prohibits prisons from inflicting cruel

and unusual punishment on prisoners. "The Constitution 'does not mandate comfortable prisons,'

but neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 . . . (1994)

(citations omitted). The Eighth Amendment does, however, impose a duty on prison officials to

protect prisoners from violence at the hands of other prisoners. *Id* at 833.

18

As the *Savocchio* court gave a good synopsis of Eighth Amendment claims of this type, writing as follows:

> To prevail on an Eighth Amendment failure-to-protect claim, an inmate must satisfy both an objective and a subjective requirement. First, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." [Farmer, 511 U.S. at 834] The Supreme Court specifically left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. *Id,* n3.
>
> And second, the prison officials must have acted with deliberate indifference to prisoner health or safety. *Id* at 834. "Deliberate indifference" is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837. . . .
>
> However, prison officials avoid liability if "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id* at 844. "A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,'" not absolute safety. *Farmer,* 511 U.S. at 844, citing *Helling v. McKinney,* 509 U.S. 25, 33 . . . (1993).

*Id.* at *5.

Applying these standards, the Court first looks to see if Williams demonstrates that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer,* 511 U.S. at 834. This is an objective standard which must be based upon more than his subjective fear. Second, he must prove that the BOP acted with deliberate indifference to his health or safety. If Williams' fears are not justified or if the BOP's actions are reasonable, he has no Eighth Amendment claim.

This Court finds that Plaintiff has failed to show that he had a reasonable fear of a substantial risk of serious harm at the hands of staff while in the relative solitude at the SHU. Case law is replete with acknowledgments that BOP staff have a duty to protect prisoners from known risks of serious harm at the hands of murderous inmates. Such is the case in *Savocchio*. The Court found that the Plaintiff had long-standing problems with members of a certain gang and that he had met

19

the objective standard of showing that he was at substantial risk of harm in the general prison population, not only at the hands of gang members but also aspirants murdering to get into the gang.

The instant Plaintiff alleges that his outing as an informant put him at risk of harm not only from certain inmates but also from staff whom he had been investigating. However, he fails to give an evidentiary or factual basis for fearing physical assault by an SIS or other BOP staff in the SHU. He relates no example of previous attacks in SHU by any prison staff member, either SIS or non-SIS. He has therefore failed to state the objective portion of an Eighth Amendment claim. *See Age v. O'Brien*, 210 F.3d 374, 2000 WL 307396 at *2 (7th Cir. 2000)(unpublished) (affirming summary judgment as there was no evidence presented of physical injury or of extreme and officially sanctioned psychological harm).[4]

Moreover, the Court also cannot find any evidence of the required subjective, culpable frame of mind on the part of any of the named Defendants. To the contrary, to the extent that Williams had a legitimate fear of extreme reprisal from inmates, on this record, the Court finds that the BOP's moving him into SHU in June of 2007, was reasonable and appropriate. To the extent that he had a realistic fear of severe reprisal from BOP staff there, the BOP's transferring him hundreds of miles away the following month, in July, was also reasonable and appropriate.

The instant case is much like that presented in *Frasier v. Fox*, 2007 WL 2572040 (W.D. Tex. 2007) (unpublished), where the BOP prisoner claimed both negligence and deliberate indifference when the loss of his personal property put him and his family at risk. The Plaintiff claimed that the

---

[4] Having concluded that Plaintiff has failed to appropriately allege and present evidence of any constitutional claim, the Court does not need to decide the interesting issue of what injury he suffered and what injury is compensable. See 42 U.S.C. § 1997e(e). The Tenth Circuit has discussed but not decided the following about a prisoner-informant's injury: "There is no question that damages are possible where an inmate has been assaulted due to being labeled as a snitch. . . . The more difficult question is whether damages will lie in the absence of physical injury." *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001); *see also Frazier v. Fox*, 2007 WL 2572040 (W.D. Tex. 2007).

20

Defendants' loss of his property leaked the identity of his wife and daughter in Mexico and exposed them to danger because he was involved in an undercover operation involving both inmates and prison staff employees.  After the leak, his family was having to pay $400 per month for personal security.

On the motion of the Defendant BOP employees for summary judgment, the District Court found that the Plaintiff had asserted two claims, one for violating due process and another for violating the Eighth Amendment.  The Magistrate Judge recommended entry of summary judgment on behalf of the Defendants, finding that any BOP negligence was insufficient to support a finding of liability and there was "absolutely no evidence that the failure to secure and pack his property was the result of deliberate indifference on the part of prison officials." *Id.* at *6.  The same is true here.

Finally, this Court examines Williams' argument that the dispositive Motion be denied because he is first entitled to discovery to unearth evidence.   In his Motion for Discovery, he speaks generally of the difficulties of prisoners trying to litigate, but his only specific allegation about this case is that "[t]here are several witnesses which are staff and inmates that have relevant information needed to prevent a miscarriage of justice."  This lack of specificity is fatal to the request.

Plaintiff's Response to the Defendants' dispositive Motion also contains requests, but they too, fail to articulate what discovery is wanted or needed.  He flatly states that "they" took his investigation information and credited the information to another inmate of another race; then, he broadly claims, "Their actions were racially motivated and can be proven in discovery."  The only other statement regarding discovery is only marginally more specific.  It reads *in toto* as follows:

> Former SIS Lt. Quinn can testify to Plaintiff's reluctance to turn over "**all**" the physical evidence to SIS because of their rumor of being a "**shady**" operation.  (This will come out in discovery)  So the natural thing to do is take your information

21

directly to the F.B.I.

Record No. 25/26. However, the advantages of taking information directly to the beneficiary agency and not intermediaries is not an issue in this Constitutional case. Nor is who approached whom in May of 2007 relevant to Plaintiff's later-arising Eighth Amendment claim.

In short, Plaintiff's requests for discovery are over-broad or unspecific. He fails to specify what kind of discovery? – on what issues? – from whom? – or how discovery would profit his case. *See* Fed.R.Civ.P. 56(e)(2), **Opposing Party's Obligation to Respond**. Plaintiff Williams has simply not put forth sufficient specific allegations to justify a need for discovery.

The evidence which Williams does offer to date is also deficient. The evidentiary documents attached to his Complaint and attached again to his Response are few and not helpful to the crucial issues. Letters which he purportedly authored to his Prosecutor or the Attorney General in the months leading up to his SIS meeting, prove, at most, his interest in being helpful enough to support a Rule 35 Motion for Reduction of Sentence. The exhibits do not go to prove that any of the Defendants at FMC-Lexington put Plaintiff in fear for his life, nor that they knew of and were deliberately indifferent to such a risk when he was put in the SHU.

The Plaintiff has also not put forth enough relevant evidence to survive a Motion for Summary Judgment. He has failed in his duty to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Liberty Lobby*, 106 S.Ct at 2514. If the evidence is "merely colorable or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50.

The Court has concluded that there are no genuine issues as to any material facts herein and that the Defendants are entitled to Judgment as a matter of law.

22

<u>CONCLUSION</u>

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1)     Defendants' Motion to Seal [Record No. 21] being unopposed, it is **GRANTED**, and the Clerk of the Court shall **DOCKET** the attached tendered Memorandum of Law and exhibits as filed of record as of the date it was tendered and shall keep the Memorandum and its exhibits under seal hereafter.

(2)     Defendants' Motion for entry of Summary Judgment [Record No. 20] is **GRANTED** with regard to both the FTCA and *Bivens* claims, this matter is **DISMISSED**, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

(3)     Plaintiff's Motion for an Order denying the disclosure of personal information [Record  No. 22] is **DENIED** as moot.

(4)     Plaintiff's remaining Motions, for Discovery [Record  No. 23] and for the Court to Deny the Defendants' dispositive Motion [Record  No. 25/26], are both **DENIED** for the reasons stated herein.

This June 11, 2008.



**Signed By:**

**_Karl S. Forester_** $KSF$

**United States Senior Judge**